UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CRIMINAL ACTION NO: 3:08-CR-235-MR-DCK

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| RAUL ORTIZ. ) | |
| ) | |

**THIS MATTER** is before the Court upon the "Defendant's Motion to Suppress Statements" (Document No. 13) filed on January 30, 2009. The United States opposes the motion. (Document No. 17). An evidentiary hearing was held on March 4, 2009, with the Defendant personally present with counsel. Three witnesses, including the Defendant, testified at the hearing. Having fully considered the motion and response, as well as the testimony, evidence, and argument at the hearing, the undersigned recommends that the Defendant's motion be **denied** and makes the following proposed findings of fact and conclusions of law:

### I. Issues

The main issue before the Court is whether the Defendant's post-arrest statements to the police officers "were coerced and involuntary in violation of the Fifth Amendment." Defense counsel also argued at the conclusion of the hearing that if any of the Defendant's incriminating statements were elicited prior to the *Miranda* warning, they should also be suppressed on that basis.

### II. Finding of Facts

In early 2008, detectives of the Waxhaw Police Department and Monroe Police Department conducted a drug-trafficking investigation involving the Defendant. During this investigation, an

undercover officer and a confidential informant made separate controlled buys of cocaine from Defendant Ortiz, respectively on February 14 and March 20, 2008. According to the United States, the Defendant had conversations with the undercover officer about Ortiz' ability to obtain cocaine for resale.

The controlled buy on March 20, 2008 occurred at the Defendant's residence at 2705 Birch Street. When police officers arrived at the scene, the Defendant fled on foot but was quickly apprehended. Officers handcuffed the Defendant and placed him in a marked police car while they executed a state search warrant for the residence.[1] Officers found over 400 grams of cocaine and a Smith & Wesson firearm during the search of the residence.

Detective/ABC Officer David McCallister of the Monroe Police Department placed the Defendant in another police vehicle and transported him to the police station. Det. McCallister testified that he conversed with the Defendant in a friendly manner during the drive to the police station. Det. McCallister testified that he had noticed various tools in the garage, and since he had formerly worked as a mechanic and welder, he conversed with the Defendant about auto repair work. He testified that the Defendant's demeanor was calm and relatively cordial. The trip to the police station took approximately 25 minutes. During the drive, Det. McCallister asked Ortiz if he wanted to "talk" (i.e., cooperate), and Ortiz indicated he did. Det. McCallister advised Ortiz that he should wait until they were at the police station before making any statements. Det. McCallister testified that there was no more conversation on that subject during the drive. The Defendant confirmed in his testimony that they had talked about cars and that they did not talk about drugs at this time. (See FTR 3:25:00-36).

---

[1] The Defendant estimated he remained in this vehicle for "at least 35-45 minutes."

Upon arrival at the police station, Det. McCallister took Ortiz to the office of Sgt. W J. Goforth. They sat at her desk and waited briefly for her to arrive. Det. McCallister and Sgt. Goforth both testified that upon her arrival, she gave the Defendant a typed "Advice of Rights" form to read. She informed the Defendant of the charges against him and advised him of his Miranda rights in English. The testimony (including the Defendant's own testimony) reflects that the Defendant is fluent in English and had no trouble understanding. Det. McCallister testified that he observed Sgt. Goforth read the Defendant his *Miranda* rights while the Defendant read along from the written form. Sgt. Goforth asked the Defendant if he wanted to talk, and he responded that he did want to talk to the police. The Defendant then signed the waiver of rights form before proceeding to make a statement. The form bears Ortiz' signature and indicates he signed it at 8:12 p.m. The Defendant acknowledged at the hearing that it was his signature. (See FTR 3:36:35-45); Gov. Exhibit 3. Officer McCallister and Sgt. Goforth both testified that they witnessed Ortiz sign the waiver before he was questioned. The testimony indicated that Ortiz was calm and not under the influence of any alcohol or drugs at the time.

According to the testimony, Ortiz then made various incriminating statements about his drug trafficking activities and his knowledge of other criminal activities. They discussed the possibility of Ortiz becoming a confidential informant for the police. Both officers testified that at no time did they tell the Defendant that his statements would not be used against him. At the conclusion of the interview, Ortiz signed a written statement prepared by Sgt. Goforth. The Defendant acknowledged the contents by signing the statement. (See FTR 3:36:35-45). The Defendant disputes the order of events. He took the stand at the suppression hearing and testified that he signed the waiver of rights *after* he spoke with the officers at the police station. (See FTR 3:28:15-25).

On November 19, 2008, a federal grand jury returned a five-count indictment against the Defendant Raul Ortiz, charging him with various drug trafficking and firearm offenses. On February 28, 2009, a five-count superceding indictment was returned against the Defendant, charging him in Count One with violating 21 U.S.C. §§ 841 (a)(1), (b)(1)(A), and 846 for conspiracy to possess cocaine with the intent to distribute; in Counts Two and Three with violating 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) for knowingly distributing and possessing with intent to distribute cocaine on separate dates; in Count Four with violation of 18 U.S.C. §922(g)(1) for knowing possession of a firearm by a convicted felon; and in Count Five with violation of 18 U.S.C. §924(c)(1)(A) for using and carrying a firearm during and in relation to a drug trafficking crime. The indictment included notice of forfeiture regarding the firearm.

### III. Conclusions of Law

The Fifth Amendment to the United States Constitution guarantees that "No person shall be...compelled in any criminal case to be a witness against himself..." U.S. Constitution, amend. V. To safeguard such right, officers must inform a suspect in custody of his right to remain silent, that any statement he makes may be used as evidence against him, and that he has a right to retain counsel or have counsel appointed for him. *Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966); *Texas v. Cobb*, 532 U.S. 162, 171-72 (2001) (observing that "a suspect must be apprised of his rights against compulsory self-incrimination and to consult with an attorney before authorities may conduct custodial interrogation"); *Dickerson v. United States*, 530 U.S. 428, 435 (2000) (reaffirming *Miranda*).

A suspect is "in custody" for *Miranda* purposes when formally arrested or when constrained to a degree tantamount to formal arrest. *United States v. Colonna*, 511 F.3d 431, 434-35 (4th Cir.

2007); *United States v. Parker*, 262 F.3d 415, 419 (4th Cir.2001) (quoting *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984)). Custodial interrogation refers to "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. Statements obtained from a suspect during a custodial interrogation without a proper *Miranda* warning are generally inadmissible. *Missouri v. Seibert*, 542 U.S. 600, 608 (2004). In the present case, all statements at issue occurred after the Defendant was arrested and in police custody.

The Defendant acknowledged at the hearing that he and Det. McCallister had talked cordially about cars during the drive and did not talk about drugs at that time. (See FTR 3:25:24-36). The Defendant acknowledged that, at the police station, he was given a *Miranda* warning in English, both verbally and in writing.[2] He acknowledged that he then signed a waiver of rights form. The Defendant nonetheless contends that his statements to the officers should be suppressed because he did not make such statements freely, voluntarily, and without coercion. Near the end of the hearing, the Defendant also claimed that he signed the waiver of rights *after* giving his statements to the officers. (See FTR 3:28:15-25).

The Government introduced the testimony of two police officers, Det. McCallister and Sgt. W. J. Goforth. They testified that, at the police station, the Defendant was given a full *Miranda* warning verbally, as well as a written form to read. They testified that after the Defendant was read his *Miranda* rights, he signed a waiver of rights and then offered information about his drug trafficking activities. They testified that Ortiz subsequently signed a written statement. Det.

---

[2]The Defendant speaks fluent English, did not need an interpreter, and testified in English without any difficulty at the suppression hearing.

McCallister indicated that he confirmed the accuracy of the statement with Ortiz before Ortiz signed it. The officers both testified that no specific promises of leniency or immunity were made to the Defendant.

The undersigned found the testimony of the officers to be forthright, consistent in all material respects, and fully credible. The circumstances at the police station were businesslike and straightforward. Although the Defendant had initially fled from police, he had over an hour to calm down before he was questioned. The conversation at the station was calm and conducted without any yelling, bullying, or intimidation. The officers indicated that the Defendant was offered food, water, bathroom breaks, and the chance to make several phone calls. The Defendant was not physically threatened or otherwise coerced into signing the waiver of rights or making any statements. The circumstances surrounding the interview do not reflect the kind of coercion or pressure that might overcome an individual's will. See *Berkemer,* 468 U.S. at 428.

Considering all the circumstances, it is readily apparent that the officers did not question the Defendant against his will. Rather, the Defendant sought to "help himself" by voluntarily telling them, after his *Miranda* warning, that he wished to provide information. Moreover, the officers took the precaution of having the Defendant sign a written waiver of rights before proceeding with the conversation.

Although the Defendant claims that he did not waive his rights before making his statements to the police, such argument is entirely self-serving and inconsistent with the testimony of both officers and the signed waiver. The United States pointed out that the Defendant is no stranger to the *Miranda* warning, having been arrested and convicted for at least three other criminal offenses.

Both officers testified credibly and consistently that the Defendant was questioned only after he signed the waiver of rights. The Government has carried its burden of showing that the Defendant's statements were made freely, knowingly, and voluntarily after a full *Miranda* warning. The Defendant's statements need not be suppressed.

### IV. Conclusion

The Defendant was given a full *Miranda* warning and signed a written waiver of rights before making his voluntary statements to the officers. The United States has carried its burden of showing that the Defendant freely, knowingly, and voluntarily gave his statements to the officers. Suppression of any post-*Miranda* statements by Defendant is not warranted. The Defendant has not shown any constitutional violation that would require exclusion of any statements or evidence.

**IT IS THEREFORE RECOMMENDED** that the "Defendant's Motion to Suppress Statements" (Document No. 13) should be **DENIED**.

### Notice of Appeal Rights

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(c), written objections to the proposed findings of fact and conclusions law and the recommendations contained in this memorandum must be filed within ten (10) days after service of same. *Snyder v. Ridenour*, 889 F.2d 1363, 1365 (4th Cir.1989); *United States v. Rice*, 741 F.Supp. 101, 102 (W.D.N.C.1990). Failure to file objections to this memorandum with the District Court constitutes a waiver of the right to *de novo* review by the District Court, *Snyder*, 889 F.2d at 1365, and may preclude the parties from

raising such objections on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841, 845-46 (4th Cir.1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir.1984).

Signed: March 9, 2009

David C. Keesler
United States Magistrate Judge