## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL CASE NO. 3:12-cv-00304-MR
## [CRIMINAL CASE NO. 3:08-cr-00235-MR]

| | | |
|---|---|---|
| RAUL ORTIZ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM OF** |
| | ) | **DECISION AND ORDER** |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 [Doc. 1].

## I.    BACKGROUND

### A.    Offense Conduct

In January 2008, detectives with the Waxhaw Police Department and the Monroe Police Department launched a joint investigation into the Petitioner's drug-trafficking activities.  [Criminal Case No. 3:08-cr-00235-MR ("CR") Doc. 17: Gov't's Response to Motion to Suppress].  In February 2008, a confidential source arranged a controlled buy during which an undercover officer purchased fifteen grams of powder cocaine from the Petitioner.  [CR Doc. 36:  Presentence Report ("PSR") at 3].  During the controlled buy, the

Petitioner informed the officer that he could access quantities of cocaine up to one kilogram for future purchases. [Id.]. In March 2008, a confidential informant met the Petitioner at his residence for another controlled purchase of cocaine. [Id. at 4]. During this transaction, the Petitioner retrieved 167.3 grams of cocaine from a storage location in his garage, weighed it on his scales, and accepted cash from the informant in exchange for the drugs. [Id.]. During the transaction, the Petitioner wore a handgun in the waistband of his pants. [Id.]. Following completion of the deal, the police arrived on scene to arrest the Petitioner. [Id.]. The Petitioner attempted to flee the residence and ditch his drug proceeds in the yard. [Id.]. Officers apprehended the Petitioner and placed him under arrest. [Id.]. A subsequent search of the Petitioner's home produced an additional 236.8 grams of cocaine, 49 grams of marijuana, $700 in cash, digital scales, and assorted drug paraphernalia. [Id.]. During the Petitioner's interview with law enforcement officers, he admitted to selling approximately 144 kilograms of powder cocaine at a cost of tens of thousands of dollars and also stated that he carried a gun for protection. [Id.].

### B.  Procedural History

On November 19, 2008, the grand jury in this District charged the Petitioner by way of a Bill of Indictment with one count of conspiracy to

possess with intent to distribute at least five kilograms of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A) ("Count One"); two counts of distributing and possessing with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) ("Counts Two and Three"); one count of possession of a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1) ("Count Four"); and one count of using and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) ("Count Five"). [CR Doc. 1]. A Superseding Bill of Indictment was returned on February 18, 2009, which altered the dates of the conspiracy alleged in Count One but charged the Petitioner with the same substantive counts. [CR Doc. 18].

At the Petitioner's initial appearance on December 5, 2008, attorney Aaron E. Michel was appointed to represent him. On January 30, 2009, counsel for the Petitioner filed a motion to suppress statements that the Petitioner had made to law enforcement officers after his initial arrest in March 2008, arguing that such statements were coerced and involuntary in violation of the Fifth Amendment and therefore inadmissible at trial. [CR Doc. 13: Motion to Suppress]. On March 4, 2009, the Honorable David C. Keesler, United States Magistrate Judge, conducted a hearing on the Petitioner's motion to suppress. [CR Doc. 23: Transcript of Suppression Hearing]. At

that hearing, Officer David McCallister of the Monroe Police Department testified that he was involved in the investigation of Petitioner's drug activities and was present during the March 2008 controlled buy. [Id. at 8]. Officer McCallister testified that he witnessed Sergeant Watinia Goforth advise the Petitioner that he was under arrest and read him his <u>Miranda</u> rights while still at the Petitioner's house. [Id. at 10-12]. Officer McCallister and Sergeant Goforth both testified that a waiver of <u>Miranda</u> rights was subsequently obtained from the Petitioner at the police station prior to Petitioner's providing statements concerning his drug trafficking activities. [Id. at 13-15, 37-43].

The Petitioner also testified at the suppression hearing concerning the voluntariness of his statements. [Id. at 55, 65]. During cross-examination, the Petitioner acknowledged that the statements he had made to the officers were "truthful" and that he had signed a written account of the statement after it was typed up by Sergeant Goforth. [Id. at 63-65]. Following the hearing, on March 9, 2009, the Magistrate Judge entered a Memorandum and Recommendation that the motion should be denied. [CR Doc. 20: Memorandum and Recommendation].

On March 13, 2009, attorney Matthew Pruden made an appearance on behalf of the Petitioner and moved to be substituted as counsel of record. [CR Doc. 21]. In his motion, Mr. Pruden stated that he had been retained by

the Petitioner to take the place of court-appointed counsel, Aaron Michel. The Court granted the motion for substitution on March 24, 2009. [CR Doc. 22].

The Petitioner did not file any objections to the Magistrate Judge's recommendation regarding the suppression motion, and on March 30, 2009, this Court accepted that recommendation and denied Petitioner's motion to suppress. [CR Doc. 24: Order].

Two days later, on April 1, 2009, the Petitioner entered a straight-up guilty plea to Counts Two through Five of the Superseding Bill of Indictment, planning to proceed to trial on Count One. [CR Doc. 48: Transcript of Rule 11 Hearing at 3, 18]. At that time, Judge Keesler conducted a plea hearing and colloquy pursuant to Federal Rule of Criminal Procedure 11. [Id. at 2-23]. During the plea hearing, the Petitioner affirmed under oath: that he understood the charges to which he was pleading guilty, as well as the maximum penalties that he faced; that he was pleading guilty because he was in fact guilty of the offenses charged in Counts Two, Three, Four and Five of the Superseding Bill of Indictment; that no one had threatened, intimidated or forced him to plead guilty; that no one had made him any promises of leniency or a light sentence or otherwise induced him to plead guilty; that he had had sufficient time to discuss with his attorney possible

defenses to the charges and was satisfied with the services of his attorney; and that he had heard and understood all parts of the proceeding and still desired to plead guilty. [Id. at 9-19]. Counsel for the Petitioner also acknowledged to the Court that he had reviewed the consequences of the guilty plea with the Petitioner and believed that the Petitioner knew what he was doing. [Id. at 19-21]. At the conclusion of the hearing, Judge Keesler accepted the Petitioner's guilty plea as having been knowingly and voluntary made. [Id. at 21; see also CR Doc. 26: Entry and Acceptance of Guilty Plea].

On April 8, 2009, one week after the Petitioner's guilty plea to Counts Two through Five, the Government moved to dismiss the drug conspiracy charge stated in Count One of the Superseding Bill of Indictment. [CR Doc. 28: Motion to Dismiss]. That same day, the Court granted the Government's motion. [CR Doc. 29: Order].

Following entry of the Petitioner's guilty plea, the probation office prepared a presentence report ("PSR"). [CR Doc 36: PSR]. With respect to the possession counts, the probation officer recommended a base offense level of 36, based on the Petitioner possessing a total amount of 144 kilograms of powder cocaine and 49 grams of marijuana. [Id. at 5]. After reducing Petitioner's offense level by three levels for acceptances of responsibility, the probation officer recommended a total offense level of 33,

which, when combined with a criminal history category of III, yielded an advisory Sentencing Guidelines range of imprisonment of between 168 and 210 months, plus a mandatory consecutive sentence of five years for Count Five. [Id. at 6, 9, 16]. The Petitioner filed written objections to the PSR, specifically objecting to the drug-quantity determination of 144 kilograms of cocaine. [CR Doc. 35: Response to Gov't's Objections to PSR].

The Court conducted the Petitioner's sentencing hearing on February 3, 2010. [CR Doc. 49: Sentencing Transcript]. At the beginning of the hearing, the Petitioner affirmed that he was pleading guilty knowingly and voluntarily; that he was, in fact, guilty of the offenses charged in Counts Two, Three, Four and Five; and that his plea was not the result of any force, threat, or promise. [Id. at 3-5].

In response to the Petitioner's objection to the drug quantity attributed to him in the PSR, the Government called Officer McCallister to testify. Officer McCallister testified that during the post-arrest interview, the Petitioner provided details regarding his customers, as well as local cocaine suppliers, distributors, and dealers with whom he associated. [Id. at 12-15]. Officer McCallister testified that when the Petitioner was asked about his drug sales, he informed the officers that he had sold ten kilograms of cocaine per week for three months, and three kilograms of cocaine per week for two

more months.  [Id. at 14-15].  During the interview, Officer McCallister created a diagram of the Petitioner's drug sales, but mistakenly calculated the total amount of drugs sold as 148 kilograms.  Nevertheless, Officer McCallister testified, the Petitioner agreed during his interview that the information contained in the diagram was "a fair representation [and] accurate."  [Id. at 15].[1]

The Government also presented the notes taken by Sergeant Goforth during the March 20 interview.  [Id. at 16-18].  Officer McCallister testified that Sergeant Goforth had printed the typed notes after the Petitioner finished making his statement and that the Petitioner had reviewed and signed the typed statement, confirming the information he had just provided.  [Id.].

The Government also called Javier Villarreal, a Monroe police officer, to testify at the sentencing hearing.  [Id. at 23-24].  Officer Villarreal testified that he was involved in the Petitioner's arrest at the time the Petitioner was taken into federal custody.  [Id. at 22].  Officer Villarreal testified that another officer advised Petitioner at that time of his Miranda rights, and thereafter Petitioner indicated that he wanted to talk with Officer Villarreal.  [Id.].  According to Officer Villarreal's testimony, during his conversation with the

---

[1] Officer McCallister amended this diagram during the sentencing hearing to reflect the proper calculation of the amount of drugs involved, 144 kilograms. [Id. at 15].

Petitioner, the Petitioner provided him the name of his supplier, an individual named "Juan," and also gave him a list of people to whom he had provided drugs.  [Id. at 23].  The Petitioner told Officer Villareal that he had worked with Juan for about a year and a half, that he had originally bought two kilos of cocaine from Juan, and thereafter obtained a kilo or two per week from Juan until his arrest.  [Id. at 24].

The Government also introduced at sentencing the transcript of the hearing on Petitioner's motion to suppress, during which the Petitioner had testified that he signed Sergeant Goforth's typed statement and further confirmed that all of the statements he provided to the officers, including the information about drug quantities, were truthful.  [Id. at 26-27].

Counsel for the Petitioner argued that the evidence regarding the drug amount was not sufficient or reliable.  [Id. at 33-38].  He also argued that evidence of the Petitioner's drug-trafficking activities, outside of the two incidents supporting the substantive possession-with-intent-to distribute counts, did not constitute relevant conduct and, further, that it violated the Sixth Amendment to consider such evidence, because the Petitioner had not pleaded guilty to the conspiracy count.  [Id. at 39-43].  The Court rejected counsel's argument, finding that the evidence was reliable and sufficient to establish the 144-kilogram amount by a preponderance of the evidence.  [Id.

at 47-48].  The Court further found that evidence of the Petitioner's drug-trafficking activities constituted relevant conduct and that it was not a violation of the Sixth Amendment to consider it as such.  [Id. at 48]. Accordingly, the Court accepted the PSR as written.  [Id. at 49].  The Court then sentenced the Petitioner to 180-month concurrent sentences on Counts Two and Three, a concurrent 120-month sentence on Count Four, and a consecutive 60-month sentence on Count Five, for a total of 240 months' imprisonment.  [Id. at 58].  The Court entered the Judgment on February 16, 2010.  [CR Doc. 40: Judgment].

The Petitioner appealed his sentence.  On appeal, the Petitioner argued that this Court: erred in its drug-quantity determination; erred in holding that the evidence of the Petitioner's drug-trafficking activities unrelated to the substantive counts was properly considered relevant conduct; and committed a Sixth Amendment violation by considering conduct to which Petitioner did not plead guilty.  On February 7, 2011, the Fourth Circuit Court of Appeals affirmed Petitioner's sentence in all respects. United States v. Ortiz, 410 F. App'x 594 (4th Cir. 2011).  The Petitioner did not file a petition for a writ of certiorari in the Supreme Court.

On May 11, 2012, the Petitioner filed the present Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255.  [Doc. 1].  In his

motion, the Petitioner raises several claims of ineffective assistance, both in the district court and on appeal, including claims that counsel was ineffective in failing to preserve his right to appeal this Court's denial of his motion to suppress; that counsel improperly induced the Petitioner into entering a straight-up plea of guilty only a week after entering his appearance of counsel, rather than filing a new motion to suppress; that counsel failed to advise the Petitioner that he could preserve his right to appeal the denial of the motion to suppress and enter a conditional plea; and that counsel failed to negotiate "a drug quantity agreement with the government based on the fact that petitioner had disclosed incriminating information to the government agent's [sic] under the promise that the prosecutor will argue for a lesser sentence." [Doc. 1 at 4]. The Petitioner also alleges that counsel failed to investigate the circumstances of the Petitioner's arrest and interview, namely, that the arresting officers "promised immunity to petitioner therefore petitioner came up clean and disclosed all information regarding his involvement and other people [sic] involvement in the offense." [Id. at 4]. The Petitioner further alleges that counsel failed to argue to the Court that the passage of time between the Petitioner's arrest in March 2008 and his indictment in November 2008 indicated that "the information provided by petitioner was being investigated and obviously was corroborated and

arrest[s] were made and counsel failed to force the government to disclose tha[t] information to the Court," failed to oppose the drug quantity findings that were based on his confession "under the promise that it would not be used against him," and failed to oppose the drug quantity calculation that "was made under speculation." [Id. at 5]. Finally, Petitioner alleges that appellate counsel was ineffective in failing to appeal the denial of the motion to suppress. [Id. at 5].[2]

The Court ordered the Government to respond to the Petitioner's allegations [Doc. 2], and the Government filed a response on November 13, 2012. [Doc. 11]. In response to the Petitioner's claims of ineffective assistance of counsel, the Government submits the affidavit of the Petitioner's former attorney, Matthew G. Pruden. With respect to the drug-quantity calculation, Mr. Pruden notes in his affidavit that, prior to his involvement in the case, the Petitioner, without the benefit of a non-attribution agreement, provided information to law enforcement and that this information served as the basis for both the conspiracy count and the Government's position concerning the drug quantity attributable to Petitioner.

---

[2] While the Petitioner states in his motion that he "will develope [sic] [the] issues properly in a separate memorandum," [Doc. 1 at 5], to date, the Petitioner has not filed a supporting memorandum.

[Doc. 11-2: Pruden Aff. at ¶ 3]. Mr. Pruden explains that he contested the drug quantity at sentencing and on appeal, arguing that there was insufficient corroboration to support the drug quantity attributable to the Petitioner and that the evidence upon which the Government relied did not constitute relevant conduct for sentencing purposes. [Id. at ¶¶ 3-4]. With respect to the Petitioner's argument that he improperly failed to appeal the denial of the motion to suppress, Mr. Pruden explains that he did not appeal the suppression issue raised before his representation of the Petitioner because that issue was only applicable to Count One and with the subsequent dismissal of that Count, there was no purpose to be served by appealing the suppression ruling. [Id.].

The Petitioner filed a reply to the Government's response. [Doc. 12]. In his reply, the Petitioner asserts, for the first time, an additional claim of ineffective assistance of counsel based upon counsel's error in advising the Petitioner to plead guilty to Count Four of the Superseding Bill of Indictment. [Id. at 3]. Specifically, the Petitioner argues that under United States v. Simmons, 649 F.3d. 237 (4th Cir. 2011) (en banc), his prior state conviction for felony possession of marijuana did not qualify as a predicate offense for the purposes of 18 U.S.C. § 922(g)(1), and therefore, counsel was ineffective in advising him to plead guilty to this offense.

## II.     STANDARD OF REVIEW

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings" in order to determine whether a petitioner is entitled to any relief.  If a petitioner's motion is not dismissed after this initial review, the Court must direct the Government to respond.  <u>Id.</u> The Court must then review the Government's answer in order to determine whether an evidentiary hearing is warranted under Rule 8(a).  Having considered the record in this matter, the Court finds it is clear that Petitioner is not entitled to relief; therefore, an evidentiary hearing is not required.  <u>Raines v. United States</u>, 423 F.2d 526, 529 (4th Cir. 1970).

## III.     DISCUSSION

### A.     Ineffective Assistance of Counsel Standard

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense.  <u>See</u> U.S. CONST. amend. VI.  To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him.  <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88 (1984).  In making this

determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010).

Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

Finally, to demonstrate prejudice in the context of a guilty plea, a petitioner must be show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

## B.  Petitioner's Claim that Counsel was Ineffective with Respect to the Motion to Suppress

The Petitioner first alleges that counsel was ineffective in failing to preserve his right to appeal the Court's denial of his motion to suppress, in failing to appeal the denial of his motion to suppress, and in failing to file a new motion to suppress.

As the Petitioner's former counsel explains in his affidavit, however, once the Government decided to dismiss the drug conspiracy count, there was no purpose to be served by appealing the motion to suppress or filing a second motion to suppress.  The evidence which supported the Petitioner's guilt as to the firearm and substantive drug-trafficking counts arose from the controlled buys conducted by confidential informants working with the Government.  The Government relied on the Petitioner's statements made in his post-arrest interview only to support the drug conspiracy charged in Count One.  Once this count was dismissed, the suppression of that evidence would not have made a difference to the Petitioner.

While the Petitioner's statements were used as relevant conduct during the sentencing proceedings, the Fourth Circuit has made clear that "statements obtained in violation of Miranda, if they are otherwise voluntary, may generally be considered at sentencing."  United States v. Nichols, 438

F.3d 437, 442 (4th Cir. 2006).  In light of the overwhelming evidence that the Petitioner made these statements voluntarily and with an understanding of his right to decline to make such statements, the Petitioner cannot show any prejudice arising from counsel's failure to pursue the suppression issue. The Petitioner's claim, therefore, fails.

### C.  Petitioner's Claim that Counsel Was Ineffective in Advising Him to Plead Guilty

The Petitioner next claims that counsel "erroneously induced" him to enter a straight-up guilty plea one week after being retained as Petitioner's attorney and failed to advise him that he could enter a conditional plea based on the denial of the motion to suppress.

For the reasons set forth above, no purpose would have been served by appealing the denial of Petitioner's motion to suppress; accordingly, counsel did not provide deficient representation in failing to advise the Petitioner of the possibility of entering a conditional guilty plea.  As for the Petitioner's assertion that he was erroneously induced to enter a straight-up guilty plea to the substantive drug-trafficking and firearm charges, the record establishes that the Petitioner's plea was both knowing and voluntary. The Petitioner stated under oath during his Rule 11 colloquy that no one had made him any promises of leniency to induce him to plead guilty.  [CR Doc.

48: Rule 11 Transcript at 18-19]. The Petitioner also acknowledged that he had had enough time to discuss with counsel possible defenses to the charges and that he was satisfied with the services of his attorney. [Id. at 19]. The Petitioner reaffirmed at sentencing that his plea of guilty was not the result of any force or threat or promise and that he was pleading guilty voluntarily. [CR Doc. 49: Sentencing Transcript at 4-5]. "[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005). Finally, the Petitioner does not seriously challenge any of the evidence used to support these convictions, nor does the Petitioner allege that absent counsel's advice, he would have proceeded to trial instead of pleading guilty to Counts Two through Five of the Superseding Bill of Indictment. Accordingly, the Court concludes that the Petitioner's claim on this issue is without merit.

### D. Petitioner's Claim that Counsel Was Ineffective in Failing to Investigate Incriminating Statements

The Petitioner next claims that counsel was ineffective in failing to investigate the circumstances surrounding his interview by Officers

McCallister, Goforth, and Villarreal.  Specifically, the Petitioner alleges that these officers promised him immunity from prosecution and a reduction in his sentence for his "coming clean."  [Doc. 1 at 4].

The Petitioner's claim must be rejected.  There is no evidence in the record that counsel had any basis for investigating the circumstances of that interview or that the Petitioner was, in fact, promised leniency for his statements.  Officers McCallister and Goforth testified at the suppression hearing that at no time did they tell the Petitioner that his statements would not be used against him, and that no specific promises of leniency or immunity were made to the Petitioner.  Further, both officers testified that at the police station the Petitioner was given a full <u>Miranda</u> warning both orally and in written form; that the Petitioner was read his <u>Miranda</u> rights; and that he signed a waiver of rights form and then offered information about his drug trafficking activities.  The officers further testified that the Petitioner signed a written statement, confirming the information he provided.  The Petitioner acknowledged that he was given a <u>Miranda</u> warning in English, both orally and in writing, and that he signed a waiver of rights form.  While the Petitioner claimed that he did not sign the waiver of rights until after giving his statements to the officers, Judge Keesler heard all of the testimony and found the officers' testimony "to be forthright, consistent in all material

respects, and fully credible." [CR Doc. 20: Memorandum and Recommendation at 6]. Judge Keesler found further that the Petitioner "sought to 'help himself' by voluntarily telling them, after his Miranda warning, that he wished to provide information" and that his claim that he did not waive his rights before making the incriminating statements was "entirely 'self-serving' and inconsistent with the testimony of both officers and the signed waiver." [Id.]. Based on this evidence, counsel had no reason to investigate further the circumstances under which the Petitioner made his statements to law enforcement officers. Having shown neither deficient representation nor prejudice, the Petitioner's claim on this issue must be dismissed.

### E. Petitioner's Claim that Counsel Was Ineffective in Representing Him at Sentencing

Next, the Petitioner asserts that counsel provided deficient representation during his sentencing hearing.

First, the Petitioner alleges that counsel was ineffective in failing to argue at sentencing that the passage of time between his arrest and the time of his indictment indicated that he had provided useful information to the Government and that "counsel failed to force the government to disclose" this information to the Court. [Doc. 1 at 5].

The Petitioner's argument is without merit. There is no evidence of any cooperation agreement between the Government and the Petitioner, and the mere lapse of time between the Petitioner's arrest and his federal indictment is no indication of any such agreement. Therefore, the Petitioner cannot show that counsel's failure to argue this point affected his sentence in any prejudicial way.

Second, the Petitioner alleges that counsel failed to oppose the drug quantity attributable to him based on his statements to law enforcement officers concerning his drug activities. Contrary to the Petitioner's assertion, counsel filed a written objection to the Government's contention that the Petitioner was responsible for approximately 144 kilograms of cocaine based on statements the Petitioner made to law enforcement. [CR Doc. Doc. 35: Defendant's Response to Gov't's Objections]. In that written objection, counsel argued that the 144 kilograms were not a part of the relevant conduct, that this drug-quantity determination was based on insufficient evidence, and that this Court's consideration of this conduct constituted a violation of the Sixth Amendment because the Petitioner did not plead guilty to that conduct. [Id. at 3-9]. Counsel further objected to the drug amount at the sentencing hearing. [CR Doc. 49: Sentencing Transcript at 34-42]. When this Court rejected the Petitioner's objections, counsel continued to

challenge the drug amount on appeal.  While counsel was ultimately unsuccessful in challenging the drug amount, the Petitioner has failed to show that his performance in this regard was deficient or prejudiced him in any way.  Accordingly, the Petitioner's argument on this issue also fails.

### F.     Petitioner's Claim that Counsel Was Ineffective in Advising Petitioner to Plead Guilty to Count Four in Light of <u>Simmons</u>

In his reply brief, the Petitioner asserts, for the first time, an additional claim of ineffective assistance of counsel based upon counsel's error in advising the Petitioner to plead guilty to Count Four of the Superseding Bill of Indictment.  [Doc. 12 at 3].  Specifically, the Petitioner argues that under <u>United States v. Simmons</u>, 649 F.3d. 237 (4th Cir. 2011) (en banc), his prior state conviction for felony possession of marijuana did not qualify as a predicate offense for the purposes of 18 U.S.C. § 922(g)(1), and therefore, counsel was ineffective in advising him to plead guilty to this offense.

The Petitioner failed to assert this claim in his original motion to vacate, and thus, unless this claim relates back to the original motion, it is subject to summary dismissal on the grounds that it is untimely.  <u>United States v. Pittman</u>, 209 F.3d 314, 317 (4th Cir. 2000).  Even assuming that this claim were timely asserted, however, this claim is without merit.  The Petitioner pleaded guilty on April 1, 2009.  At the time of the Petitioner's sentencing,

whether a state conviction qualified as a felony for purposes of 18 U.S.C. § 922(g)(1) was determined by considering "the maximum aggravated sentence that could be imposed for that crime upon a defendant with the worst possible criminal history." United States v. Harp, 406 F.3d 242, 246 (4th Cir. 2005). After the Petitioner's sentence was affirmed on direct appeal, the Fourth Circuit decided United States v. Simmons, 649 F.3d 237 (4th Cir. 2011) (en banc), which overruled Harp and held that a prior North Carolina offense could be considered as punishable for a term exceeding one year only if the *particular* defendant had been eligible for such a sentence under the North Carolina structured sentencing scheme. Id. at 247-48. At the time of the Petitioner's sentencing, however, Harp was still the controlling law in the circuit. The Petitioner cannot demonstrate prejudice due to counsel's failure to anticipate the Simmons decision. See United States v. Webb, 452 F. App'x 316, 318 (4th Cir. 2011). Accordingly, this ineffective assistance claim must also be dismissed.

### G. Petitioner's Claim That Post-Arrest Statements Were Obtained in Violation of Sixth Amendment

Finally, in a letter filed with the Court on May 1, 2013, the Petitioner appears to assert an additional claim that the statements that he made to

law enforcement in his post-arrest interview were obtained in violation of his Sixth Amendment right to counsel.  [Doc. 13].

The Petitioner also failed to assert this claim in his original motion to vacate, and thus, unless this claim relates back to the original motion, it is subject to summary dismissal on the grounds that it is untimely.  Pittman, 209 F.3d at 317.  Even assuming that this claim were timely asserted, however, the Petitioner is procedurally barred from asserting this claim because he failed to raise it on direct appeal.  As a general rule, a claim of error that was not raised on direct appeal is procedurally defaulted and is not cognizable on collateral review.  See Bousley v. United States, 523 U.S. 614, 621 (1998) ("Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal.") (internal quotations and citations omitted); see also United States v. Pettiford, 612 F.3d 270, 279 n.7 (4th Cir. 2010) (recognizing that claim challenging predicate offenses for purposes of defendant's classification as an armed career criminal was procedurally defaulted based on defendant's failure to challenge those predicates in the district court or on appeal, unless defendant can establish exception to procedural bar).  Where a defendant has procedurally defaulted a claim by failing to raise it on direct appeal, the claim is cognizable on collateral review only if the defendant can "show cause and actual prejudice ... or ... that a

miscarriage of justice would result from the refusal of the court to entertain the collateral attack." United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999).

Here, the Petitioner has made no effort to establish cause for his procedural default. Even if cause could be established, however, he has failed to show actual prejudice. As explained above, the evidence which supported the factual basis for the counts to which the Petitioner pleaded guilty arose from the controlled buys conducted by confidential informants working with the Government; the Petitioner's statements in his post-arrest interview were relied upon only to support the drug conspiracy charged in Count One. Once this count was dismissed, the suppression of that evidence would not have made a difference to the Petitioner. Further, because these statements were voluntarily made, the Court did not err in considering such statements at sentencing. Nichols, 438 F.3d at 442. Finally, the Petitioner has not made any showing that a miscarriage of justice would result from the Court's refusal to entertain this claim. For these reasons, the Court concludes that this claim has been procedurally defaulted and must be dismissed.

## IV.    CONCLUSION

For the reasons stated herein, the Court finds that Petitioner is not entitled to relief.  The Court further finds that Petitioner has not made a substantial showing of a denial of a constitutional right.  See generally 28 U.S.C. § 2253(c)(2); see also Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong") (citing Slack v. McDaniel, 529 U.S. 473, 484-85 (2000)).  Petitioner has failed to demonstrate both that this Court's dispositive procedural rulings are debatable, and that the Motion to Vacate states a debatable claim of the denial of a constitutional right.  Slack, 529 U.S. at 484-85.  As a result, the Court declines to issue a certificate of appealability.  See Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts, 28 U.S.C. § 2255.

## O R D E R

**IT IS, THEREFORE, ORDERED** that the Petitioner's Section 2255 Motion to Vacate, Set Aside, or Correct Sentence [Doc. 1] is **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the Court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**

Martin Reidinger
United States District Judge