THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CRIMINAL CASE NO. 3:08-cr-00235-MR

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | **O R D E R** |
| RAUL ORTIZ, | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on the Defendant's "Motion for Sentence Reduction under 18 U.S.C. § 3582(c)(1)(A) Pursuant to The First Step Act" [Doc. 66] and the Defendant's "Request for the Appointment of Counsel and for a Hearing" [Doc. 67].

**I.  BACKGROUND**

In February 2008, the Defendant Raul Ortiz sold an undercover police officer fifteen grams of powder cocaine. [Doc. 36 at ¶ 7]. A month later, the Defendant agreed to sell a confidential informant six ounces of cocaine at the Defendant's home in Monroe, North Carolina. [Id. at ¶ 8]. During the planned transaction, the Defendant asked the informant if he was a "cop" or an "informant," requiring the informant to lift his shirt to reveal whether he was wearing a wire. [Id.]. The Defendant also showed the informant a

handgun in the waistband of his pants. [Id.]. After the Defendant exchanged the cocaine for cash, police arrived to arrest the Defendant. [Id.]. The Defendant attempted to escape, and a loaded .40 caliber gun fell from his pants as he fled. [Id.]. Police later seized more than 236 grams of powder cocaine, 49 grams of marijuana, $700 in cash, and a set of digital scales and other paraphernalia. [Id. at ¶ 9]. The Defendant admitted to selling approximately 144 kilograms of powder cocaine. [Id.]. At the time the Defendant committed his offenses, he had previously been convicted of a felony drug offense. [Doc. 25].

The Defendant was charged with one count of conspiring to distribute and possess with intent to distribute at least five kilograms of powder cocaine, in violation of 21 U.S.C. § 846; two counts of distributing and possessing with intent to distribute powder cocaine, in violation of 21 U.S.C. § 841; one count of possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1); and one count of possessing a firearm during and in relation to a drug-trafficking offense, in violation of 18 U.S.C. § 924(c). [Doc. 18]. The Government filed an information under 21 U.S.C. § 851, notifying the Defendant and this Court that it would seek an enhanced penalty based on the Defendant's prior conviction of a felony drug offense. [Doc. 25]. Six

2

Case 3:08-cr-00235-MR   Document 73   Filed 12/02/22   Page 2 of 13

weeks after he was indicted, the Defendant pled guilty without a plea agreement to all of the charges with the exception of the conspiracy offense. [Doc. 26 at 4; Doc. 36 at ¶ 5].

This Court's probation office submitted a presentence report, which calculated a total offense level of 33, including a three-level reduction for acceptance of responsibility. [Doc. 36 at ¶¶ 32-35]. Based on a total offense level of 33 and a criminal history category of III, the Sentencing Guidelines advised a sentence of between 168 and 210 months' imprisonment for the drug-trafficking and felon-in-possession offenses. [Id. at ¶ 94]. The Defendant faced a statutory maximum term of thirty years in prison for his drug-trafficking offenses. [Id. at ¶ 93]. He faced a mandatory consecutive sentence of five years in prison for the § 924(c) firearm offense. [Id. at ¶ 94]. This Court sentenced the Defendant to 180 months' imprisonment for the drug-trafficking and felon-in-possession offenses, to be served concurrently, and to a consecutive term of 60 months' imprisonment for the § 924(c) firearm offense, for an aggregate sentence of 240 months' imprisonment. [Doc. 39 at 2]. The Court later reduced the Defendant's aggregate sentence to 205 months' imprisonment under Amendment 782 to the Sentencing

Guidelines. [Doc. 61]. The Defendant is currently housed at FCI Loretto with a projected release date of September 16, 2023.[1]

While incarcerated in the Bureau of Prisons (BOP), the Defendant has committed eight disciplinary infractions between 2011 and April of 2022. [Doc. 69-1]. The Defendant has completed sixteen educational courses, including obtaining his GED. [Doc. 69-2 at 1]. The Defendant's medical records reflect that he has been diagnosed with Type II diabetes, hypertension, and obesity. [Doc. 69-3 at 5].

The Defendant now moves the Court for compassionate release. [Doc. 66]. He further requests the appointment of counsel and a hearing on his compassionate release motion. [Doc. 67]. The Government filed a response opposing the Defendant's motion. [Doc. 69]. The Defendant has filed a reply. [Doc. 72]. Having been fully briefed, this matter is ripe for disposition.

## II. DISCUSSION

Section 3582(c)(1)(A), as amended by The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), permits a defendant to seek a modification of his sentence for "extraordinary and compelling reasons," if the defendant has "fully exhausted all administrative rights to

---

[1] See https://www.bop.gov/inmateloc/ (last accessed Nov. 25, 2022).

appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Here, the Government concedes that the Defendant has sufficiently exhausted his administrative remedies with the BOP by requesting compassionate release from the Warden. Accordingly, the Court will proceed to address the merits of the Defendant's compassionate release request.

As is relevant here, the Court may reduce a defendant's sentence under 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons if "such reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider the factors set forth in 18 U.S.C. § 3553(a), to the extent that such factors are applicable. Id.

Although not binding on this Court, see United States v. McCoy, 981 F.3d 271, 282 (4th Cir. 2020), the commentary to Sentencing Guidelines § 1B1.13 provides specific examples of grounds for release under § 3582(c)(1)(A). These include (1) a terminal illness; or (2) a serious physical or medical condition, a serious functional or cognitive impairment, or

5

deteriorating physical or mental health because of the aging process that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). A defendant's age may also warrant compassionate release, if (1) the defendant is at least 65 years old, (2) is experiencing a serious deterioration in physical or mental health because of the aging process, and (3) has served at least 10 years or 75% of his term of imprisonment, whichever is less. Id., § 1B1.13 cmt. n.1(B). Congress has made clear that rehabilitation of the defendant alone "shall not be considered an extraordinary and compelling reason" for a modification. 28 U.S.C. § 994(t).

In McCoy, the Fourth Circuit held that district courts are not limited to the grounds for compassionate release identified in section 1B1.13 and that the Court is "empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise." Id. at 286 (quoting United States v. Zullo, 976 F.3d 228, 230 (2d Cir. 2020)). The Court must make an individualized determination that the defendant has identified an extraordinary and compelling reason for compassionate release, considering, for example, the length of time already served, any rehabilitative

6

efforts made during the defendant's time in the Bureau of Prisons, the defendant's prior criminal history, and the defendant's age at the time he committed his offenses. See id. at 284. The defendant bears the burden of establishing that he is eligible for a sentence reduction. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

Here, the Defendant asks this Court to exercise its discretion to grant him compassionate release on the following grounds: (1) the conditions in prison have been unduly harsh because of COVID-19 and that the BOP is "ill-equipped to handle the pandemic"; (2) he has served nearly eighty percent of his sentence and has "maintained clear conduct for nearly the entire 13½ years"; (3) he has excelled in his post-sentencing rehabilitation; (4) he is at a low risk for recidivism; (5) he will be deported when he is released; (6) he suffers from medical conditions that place him at risk of complications from COVID-19; and (7) if he were sentenced today, he likely would receive a lower sentence because this Court is authorized under Dean v. United States, 581 U.S. 62 (2017), to reduce his sentence on his non-section 924(c) offenses to take into account the consecutive sentence he is required to serve for that offense. [Doc. 66 at 1-7; Doc. 72 at 6].

7

Case 3:08-cr-00235-MR Document 73 Filed 12/02/22 Page 7 of 13

The Defendant has not identified any extraordinary and compelling reason to grant him compassionate release. Although the Defendant argues that the BOP is "ill-equipped to handle the pandemic," [Doc. 72 at 6], the BOP has, as the Court has previously noted, taken significant measures to protect the health of its inmates during the COVID-19 pandemic. See United States v. Johnson, No. 1:19-cr-00020-MR-WCM, 2020 WL 7646809, at *2-3 (W.D.N.C. Dec. 23, 2020) (Reidinger, C.J.). While the COVID-19 pandemic has affected the conditions of his imprisonment, that circumstance affected all BOP inmates and is therefore not extraordinary or compelling. Additionally, as vaccines have become available and the threat posed by COVID-19 has decreased, the restrictive conditions imposed on inmates have been easing, as the Defendant himself acknowledges. [See Doc. 66 at 3]. Taken together, these measures are designed to mitigate sharply the risks of COVID-19 transmission in BOP institutions while allowing BOP to continue to fulfill its mandate of incarcerating those persons sentenced or detained based on judicial orders. Given BOP's efforts, the fact that the Defendant faces a potential risk of contracting the virus again while incarcerated, without more, is not sufficient to justify the relief he requests. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere

8

existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

The Defendant suffers from several medical conditions—including diabetes, hypertension, and obesity—that may place him at a higher risk of suffering more serious consequences from COVID-19. However, he has been vaccinated, [see Doc. 69-3 at 52], thereby reducing the threat of serious illness or death from the virus. Moreover, it appears from a review of his medical records that the Defendant's conditions are being monitored and adequately treated in prison.

With respect to the Defendant's post-sentencing rehabilitation, the Court finds that the Defendant's conduct is not an extraordinary and compelling reason to grant him compassionate release. Although the Defendant has served much of his sentence, he has been disciplined eight times since 2011 for violating BOP rules, including as recently as six months ago, and he has completed only sixteen educational courses during his imprisonment. He has not demonstrated, therefore, that he is rehabilitated and prepared not to commit crimes when released.

9

Finally, the Defendant's reliance on Dean is unavailing. This Court did not sentence the Defendant at the bottom of the advisory Guidelines range, finding instead that a sentence in the middle of the range was sufficient but not greater than necessary to best serve the sentencing objectives described in 18 U.S.C. § 3553(a). The fact that this Court did not sentence the Defendant at the bottom of the advisory Guidelines range undercuts the Defendant's argument that it would have sentenced him to a lower sentence under Dean.

Having carefully considered all of the grounds asserted by the Defendant, the Court concludes that none of these grounds, either singly or in combination, constitute an extraordinary and compelling reason for a sentence reduction.

Even if the Defendant could establish an extraordinary and compelling reason, this Court still must consider the § 3553(a) factors, as "applicable," as part of its analysis of determining whether a sentence reduction is warranted. See § 3582(c)(1)(A); United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020).

Here, the Defendant's offense conduct, which involved a display of a firearm during a drug transaction involving six ounces of cocaine, was

extremely serious. He had also previously been convicted of a drug-related offense. Based on the Defendant's history and characteristics and the need to protect the public from further crimes, the need to provide just punishment, and the need to deter the Defendant and others from engaging in similar criminal activity, the Court concludes that his aggregate sentence of 205 months' imprisonment remains sufficient but not greater than necessary to accomplish the § 3553(a) sentencing objectives.

In sum, the Court finds that there are no "extraordinary and compelling reasons" for the Defendant's release and that, in any event, analysis of the relevant § 3553(a) factors continue to weigh in favor of his continued incarceration.

By way of a separate motion, the Defendant moves for the appointment of counsel to represent him in connection with litigating his motion for compassionate release. He also requests a hearing on his motion. [Doc. 67].

With respect to the Defendant's request for counsel, the Defendant has no constitutional right to the appointment of counsel to file post-conviction motions. Lawrence v. Florida, 549 U.S. 327, 336-37 (2007) (citing Coleman v. Thompson, 501 U.S. 722, 756-57 (1991)); Rouse v. Lee, 339 F.3d 238,

11

250 (4th Cir. 2003), cert. denied, 541 U.S. 905 (2004) (citing Pennsylvania v. Finley, 481 U.S. 551, 555-56 (1987) (no constitutional right to counsel beyond first appeal of right)). The Court may, in some circumstances, appoint counsel to represent a prisoner when the interests of justice so require and the prisoner is financially unable to obtain representation. See 18 U.S.C. § 3006A(a)(2)(B). In the instant case, however, the Defendant has already filed a motion for compassionate release outlining the grounds for his motion. Further, the Court finds that the Defendant's motion can be disposed of on the papers and does not require a hearing. Accordingly, the Court concludes that the interests of justice do not require the appointment of counsel in this case. See United States v. Riley, 21 F. App'x 139, 141-42 (4th Cir. 2001). For these reasons, the Defendant's requests for counsel and for a hearing are denied.

**IT IS, THEREFORE, ORDERED** that the Defendant's "Motion for Sentence Reduction under 18 U.S.C. § 3582(c)(1)(A) Pursuant to The First Step Act" [Doc. 66] and the Defendant's "Request for the Appointment of Counsel and for a Hearing" [Doc. 67] are **DENIED**.

12

**IT IS SO ORDERED.**

Signed: December 1, 2022

Martin Reidinger
Chief United States District Judge